FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

2013 AUG 1 P 1:01

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| CISCO SYSTEMS, INC., a California corporation, and CISCO TECHNOLOGY, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CHUN-YU ZHAO, an individual, CAFE OF ART, a Virginia Company, RONGLAN SHANG, an individual, DAN LUO, an individual, JUN-LING YANG, an individual,<br><br>Defendants. | Civil Action No:<br><br>1:13 CV 938<br>GBL/JFA |

## COMPLAINT

Plaintiffs CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC., hereby complains and alleges against CHUN-YU ZHAO, CAFE OF ART, RONGLAN SHANG, DAN LUO, and JUN-LING YANG (collectively "DEFENDANTS") as follows:

### NATURE OF ACTION

1. This is an action based upon (1) Trademark Infringement under The Lanham Act, 15 U.S.C. § 1114, (2) Use of a Counterfeit Mark under the Lanham Act, 15 U.S.C. §1117(c), (3) Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)A); and Breach of Contract. Plaintiffs seek damages against the operators of a counterfeit goods syndicate, which imported counterfeit Cisco products from China into the United States, and sold those products in the United States.

2. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121. This Court has supplemental jurisdiction under 28 U.S.C. §§ 1338(b) and 1367 for all claims in this Complaint that are based upon state law because those claims are part of the same controversy as the claims being made under federal statute.

3. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 in that there is

complete diversity of citizenship between plaintiffs and defendant; and, the amount in controversy, without interest and costs, exceeds $75,000. Plaintiff Cisco Systems, Inc. ("CISCO") is, and at all times mentioned herein was, a California corporation, with its principal place of business at 170 W. Tasman Dr., San Jose, California 95134. Plaintiff Cisco Technology, Inc. ("CTI") is, and at all times mentioned herein was, a California corporation, with its principal place of business at 170 W. Tasman Dr., San Jose, California 95134. CTI owns the trademarks that are used by CISCO in marketing Cisco-branded products.

4. This Court has personal jurisdiction over the DEFENDANTS, because DEFENDANTS have transacted business within the Commonwealth of Virginia; because DEFENDANTS have misrepresented the authentic nature of the counterfeit "Cisco" products to residents of Virginia and many other states; because DEFENDANTS have caused tortious injury to Plaintiffs' trademarks within the Commonwealth of Virginia; and because DEFENDANTS have systematically directed electronic communications into the Commonwealth of Virginia with the manifest intent of engaging in business within the Commonwealth of Virginia, including the sale and/or offer for sale to internet users within the Commonwealth of Virginia.

5. DEFENDANTS have committed acts, related to the causes of action asserted in this Complaint, which demonstrate that they have individually and collectively purposefully directed its activities towards the Commonwealth of Virginia. As described more fully in this Complaint, these activities include selling counterfeit products directly into the Commonwealth of Virginia and sending counterfeit products from Virginia to other states. Plaintiffs further allege on information and belief that DEFENDANTS regularly conducted business within the Commonwealth of Virginia.

6. Defendant CAFE OF ART is and was at all relevant times a business operating in the County of Fairfax, in the Commonwealth of Virginia.

7. Defendant ZHAO was at all relevant times an individual with her principal residence in Virginia. She was also the owner of CAFE OF ART and conducted business on behalf of CAFE OF ART. At all relevant times, ZHAO controlled and directed the operations of CAFE OF ART.

8. Defendant RONGLAN SHANG ("SHANG"), is and was at all relevant times

mentioned herein an individual with her principal residence in the People's Republic of China.

9. Defendant DAN LUO ("LUO"), is and was at all relevant times mentioned herein an individual with his principal residence in the People's Republic of China.

10. Defendant JUN-LING YAN ("YANG"), is and was at all relevant times mentioned herein an individual with his principal residence in the People's Republic of China. Defendants ZHAO, CHANG, LUO, and YANG shall be referred to collectively as DEFENDANTS.

11. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES 1 through 50, inclusive, are unknown to CISCO who, therefore, sues said Defendants by such fictitious names. CISCO will amend this Complaint to show the true names and capacities of these DOE defendants when the same shall have been fully and finally ascertained.

12. CISCO is informed and believes, and thereon alleges, that each of the defendants designated herein as a DOE is legally responsible, in some manner, for the events and happenings herein referred to, and legally caused damages to CISCO as herein alleged.

13. At all times relevant to this action, each Defendant, including those fictitiously named Defendants, was the agent, servant, employee, partner, joint venturer, accomplice, conspirator, alter ego or surety of the other Defendants and was acting within the scope of that agency, employment, partnership, venture, or suretyship with the knowledge and consent or ratification of each of the other Defendants in doing the things alleged in this Complaint.

## VENUE

14. Venue for this action properly lies in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b)(2) because the DEFENDANT committed acts in furtherance of their operation, and a substantial part of the property that is the subject of this action is located within that district.

## FACTUAL ALLEGATIONS RELATING TO TRADEMARK REGISTRATIONS

15. Founded in 1984, CISCO is a global leader in technology, with a large and diverse customer base spanning governments and large enterprises, small to medium sized businesses and individual consumers. Among other areas, CISCO's business includes high quality networking and

communications technology, including telecommunications networking hardware, advanced telecommunications network design, implementation services, high-end videoconferencing technology and data center technology, among others.

16. CISCO has developed a strong name and reputation within the trade and among members of the consuming public as a leading manufacturer of mission-critical networking and telecommunications systems, and it sells these products worldwide. CISCO and CTI have invested substantial effort and resources to develop and promote public recognition of the CISCO trade name and of the family of Cisco-related marks. CISCO and CTI have used the family of Cisco trademarks to identify goods and services as being genuine CISCO products, and the Cisco marks and name are well-recognized signifiers of CISCO's high quality products and services (the Cisco marks and name are hereinafter referred to as the "Cisco Marks").

17. CTI has caused several Cisco Marks to be registered on the Principal Register of the U.S. Patent and Trademark Office in connection with a range of telecommunications, computer hardware and software products and services, and CTI owns all rights, title, and interest in numerous federal trademark registrations. The registered Cisco Marks include, but are not limited to, the following:

| Mark | Registration Number | Registration Date |
|---|---|---|
| CISCO | 1,542,339 | June 6, 1989 |
| CISCO SYSTEMS | 1,996,957 | August 27, 1996 |
| CISCO SYSTEMS and Design | 1,999,660 | September 10, 1996 |
| CISCO SYSTEMS and Design | 2,116,358 | November 25, 1997 |
| CISCO SYSTEMS and Design | 2,232,700 | March 16, 1999 |
| PIX | 2,438,680 | March 27, 2001 |
| CISCO SYSTEMS and Design | 2,488,368 | September 11, 2001 |
| CISCO | 2,498,746 | October 16, 2001 |
| CISCO SYSTEMS and Design | 2,552,361 | March 16, 2002 |
| CISCO SYSTEMS and Design | 2,959,329 | June 7, 2005 |
| CISCO and Design | 3,759,451 | March 9, 2010 |

COMPLAINT

18. The Cisco Marks are distinctive, having no meaning outside their use by CISCO in its course of business operations and in its advertising to distinguish its products and services. CISCO uses these marks to advertise through a wide variety of media including television, radio, newspapers, magazines, billboards, direct mail, web sites, and in telephone directories across the country. As a result, the Cisco Marks have become well known.

19. Cisco has also expended significant resources and effort to develop and promote public recognition of the CISCO trade name and the family of Cisco-related marks throughout the world, in part, by placing Cisco Products and the Cisco Marks in its advertising and promotional materials, which reach global consumers through a variety of media, including television, radio, newspapers, magazines, billboards, direct mail, websites, and in telephone directories.

20. Cisco has taken substantial steps and expended significant resources to research and develop strict quality-control standards for all of its products to ensure that products and services bearing the Cisco Marks continue to be of the highest quality.

21. As a result of CISCO's extensive advertising and promotional efforts and its continuous use of its core Cisco Marks for more than 25 years, CISCO has attained one of the highest levels of brand recognition. As a result of CISCO's longstanding and widespread use and promotion of the Cisco Marks, CISCO's customers worldwide have come to rely upon the Cisco Marks to identify CISCO's high-quality goods and services. Many of CISCO's products are purchased by the U.S. Government, including branches of the military, and by other industries, in critical and life-essential applications.

22. Counterfeit CISCO products jeopardize the systems into which they are placed because they do not conform with CISCO's design, specifications, production standards or quality control, and thus lack reliability. Counterfeit products that bear markings similar to the Cisco Marks provide customers with a false assurance that the products they have purchased are reliable and conform with CISCO's high standards. When counterfeit products fail, the purchasers can suffer critical losses to their business, infrastructure, and security.

23. In addition to harm to customers, the sale of counterfeit CISCO products also harms

COMPLAINT

CISCO in many ways. Among these, counterfeit CISCO products that fail create the false impression that CISCO products are unreliable, thereby improperly tarnishing CISCO's reputation and causing CISCO to suffer lost sales and business opportunities. When customers purchase Cisco-branded parts that are unreliable counterfeits, their image of CISCO is diminished and CISCO's opportunity to sell genuine, high-quality products to those customers may be forever lost. As a result, CISCO suffers substantial and irreparable harm to its brand, image, business, and the public's goodwill. CISCO also suffers lost sales as the result of customers purchasing counterfeit products, instead of genuine CISCO parts.

24. CISCO products that have been resold outside of CISCO's approved distribution channels are not normally covered by CISCO warranties or by CISCO service contracts, because CISCO cannot attest to their genuineness or condition. This restriction also applies to counterfeit products that bear Cisco Marks.

## FACTUAL ALLEGATIONS RELATING TO DEFENDANTS' CONDUCT

25. From at least 2004 through at least July 2010, Defendants sold and trafficked in counterfeit CISCO products, through businesses run by ZHAO in the Eastern District of Virginia, JDC Components and CAFE OF ART. Defendants represented the products as being genuine. ZHAO imported counterfeit Cisco products from the other Defendants located in China, and placed the proceeds of the criminal enterprise into various properties and bank accounts in the Eastern District of Virginia. ZHAO was indicted, and a jury trial ensued before the Hon. Gerald Bruce Lee in the United States District Court for the Eastern District of Virginia, Alexandria Division, in May 2011. ZHAO was found guilty by the jury of numerous criminal acts, including trafficking in counterfeit Cisco labels and products. ZHAO's actions for which she was convicted are more fully described in the indictment, *United States of America v. Chun-Yu Zhao, et al.*, Case No. 1:10CR317 (GBL). Zhao's conviction was upheld in part, and reversed in part, by the Fourth Circuit, which affirmed her conviction related to counterfeit Cisco products with counterfeit labels. It is alleged on information and belief that the other individual Defendants named herein conspired with ZHAO in the trafficking of counterfeit products, and attempted to facilitate her activities by hiding assets in

real property and bank accounts in their names.

26. A further indictment was returned by a federal grand jury in the United States District Court for the Eastern of Virginia, Alexandria Division, against SHANG, LUO, and YANG, on June 6, 2013. Case No. 1:13-CR-253 (GBL). The indictment alleges that the Defendants engaged in a conspiracy to traffic in counterfeit Cisco products from at least January 5, 2005, to July 22, 2010, along with ZHAO, and that they used the illegal proceeds of the scheme to invest in property in the United States. That matter remains pending trial.

27. The Defendants shipped or caused to be shipped from China, and JDC Networking and CAFE OF ART sold in the United States, Cisco products that were relabeled with counterfeit Cisco labels and reprogrammed to appear to be more valuable genuine Cisco products that were capable of increased functionality.

28. ZHAO transferred proceeds of the conspiracy to bank accounts in her own name and that of her sister, Chun-Yan Zhao, that were located in China.

29. ZHAO communicated by e-mail with suppliers of the counterfeit Cisco products in China about counterfeit equipment and labels on dozens of occasions.

30. ZHAO maintained bank accounts and held assets in the United States, including within the Eastern District of Virginia, China, and elsewhere in the names of her family members (such as her sister, Chun-Yan Zhao, and mother, Defendant Rong Lan Shang) and others, in order to conceal the conspiracy and its proceeds.

31. At the May 2011 trial of ZHAO in the United States District Court for the Eastern District of Virginia, the government introduced compelling evidence of her involvement in the trafficking of counterfeit Cisco products, and the assistance of the other Defendants, including:

    a. Receipt by ZHAO of an email on or about September 8, 2005, from ex-husband and co-defendant in the criminal trial Donald Cone, in which Cone asked ZHAO to request from her Chinese co-conspirators counterfeit Cisco labels with specified serial numbers and instructing "We need the labels to look good ... no smudging. and scannable."

b. On or about May 28, 2010, ZHAO sold four (4) boxed units of counterfeit Cisco equipment (Product ID WS-C3750G-12S-S), which had they been genuine would have had a combined Manufacturer Suggested Retail Price of $31,980.

On or about June 16, 2010, ZHAO sold to the United States Fish and Wildlife Service a counterfeit "Cisco" switch (Product ID WS-C3750G24TS-EIU). The switch had been imported by ZHAO from China as a lower grade and cheaper product, and she "upgraded" it to the higher grade and more expensive product, and sold it as a "new" higher grade product to the United States government.

c. On or about July 9, 2010, a Chinese co-conspirator shipped to ZHAO (in care of "JDC Networking" in Centreville, Virginia) fifty (50) counterfeit labels bearing Cisco trademarks that were designed to be affixed to transceivers (Cisco Product ID GLC-SX-MM).

d. On or about July 22, 2010, Defendant CHUN-YU ZHAO picked up a package addressed to "Kevin" at an address in the Eastern District of Virginia associated with JDC Networking that contained three hundred and twelve (312) counterfeit Cisco labels that were designed to be affixed to one hundred and fifty-six (156) "Cisco" transceivers. The package was recovered from ZHAO's purse at her residence in the Eastern District of Virginia by federal law enforcement agents.

### Partnership Agreements With Cisco

32. In 2004, Defendant ZHAO, who lived in Chantilly, Virginia, in the Eastern District of Virginia, was the sole owner and operator of a computer networking equipment business called JDC Networking, Incorporated ("JDC Networking"). Using the pseudonym "Jessica Smith," ZHAO registered JDC Networking as a Cisco partner on October 1, 2004, by agreeing to the terms and conditions of Cisco's Indirect Channel Partnership Agreement ("ICPA"). Because of breaches of that agreement, Cisco removed JDC Networking from its partnership program on December 31, 2007.

33. On July 9, 2009, again using the pseudonym "Jessica Smith," ZHAO agreed to

COMPLAINT

Cisco's ICPA for her company, which she had renamed "CAFE OF ART." The ICPA included several material terms that required ZHAO, and all partners, to conduct business in a way that would minimize the risk of selling counterfeits, including:

 a. CAFE OF ART was authorized to purchase Cisco products only from an "Authorized Source," which was defined as "a distributor that is authorized by Cisco to redistribute Products and Services within the Territory to Partner, as they are from time to time identified at http://tools.cisco.com/WWChannels/LOCATR/jsp/distributor_locator.jsp or as otherwise provided by Cisco from time to time." (ICPA, Part B, §1.1)

 b. CAFE OF ART was prohibited from selling Non-Genuine Products or Unauthorized Cisco Products. Specifically, the ICPA provides that "Reseller acknowledges that the purchase and Resale of Non-Genuine Products or Unauthorized Cisco Products, or for the Resale of Services associated with any such Non-Genuine Products or Unauthorized Cisco Products, is not within the scope of this Agreement and Reseller is not entitled to the rights granted herein with respect to the resale of such Non-Genuine Products or Unauthorized Cisco Products." (ICPA, Part B, § 1.4)

 c. CAFE OF ART was prohibited from selling counterfeit Cisco products. Specifically, the ICPA provides that "Partner shall not acquire, use, promote or Resell Non Genuine Products. Partner will not remove, alter, or destroy any form of copyright notice, trademark, logo, confidentiality notice, serial number or other product identifier provided with any Product." (ICPA, Part C, §3.2)

**FIRST CAUSE OF ACTION**
**(Federal Trademark Infringement**
*15 U.S.C. § 1114)*

34.  Plaintiffs incorporates paragraphs 1-33 of this Complaint as if fully set forth herein.

35.  Defendant has used in commerce marks that are confusingly similar to the Cisco Marks, in connection with the sale of computer networking and telecommunications equipment, in a manner that is likely to cause confusion, mistake, or to deceive, and to diminish the value of Plaintiffs' property. Defendant acted without authority in using these Cisco Marks.

36. Plaintiffs allege on information and belief that Defendant's infringing actions were committed fraudulently, willfully, and in bad faith, with knowledge of Plaintiffs' exclusive rights to and goodwill in the Cisco Marks and Plaintiffs' property interests in those Marks, or with willful blindness to the same, and with the intent to cause confusion, to cause mistake and/or to deceive.

37. As a result of the Defendant's trademark infringement, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss, property damage, and damages to its right in and to the Cisco Marks, and the goodwill associated therewith, for which they have no adequate remedy at law.

38. Due to the acts of the Defendant, Plaintiffs have suffered and will continue to suffer loss of income, profits, and valuable business opportunities and value of property, and, if not restrained, Defendant will have unfairly derived and will continue to unfairly derive income, profits and business opportunities as a result of its acts of infringement.

39. As the acts alleged herein constitute infringement of the Cisco Marks under 15 U.S.C. § 1114, Plaintiffs are entitled to monetary damages and other remedies as provided by 15 U.S.C. §§ 1116, 1117, and 1118, including treble damages, reasonable attorney's fees and prejudgment interest, and/or statutory damages provided by 15 U.S.C. § 1125.

**SECOND CAUSE OF ACTION**
**(Counterfeit of Registered Trademark)**
*15 U.S.C. § 1114(1)*

40. Plaintiffs incorporate paragraphs 1-39 of this Complaint as if fully set forth herein.

41. DEFENDANTS offered for sale, sold, or distributed goods or services that bore marks that are nongenuine, which are identical with or substantially indistinguishable from Plaintiff's registered Cisco Marks;

42. The Cisco Marks are registered on the Principal Register of the U.S. Patent and Trademark Office for the same goods or services in connection with those goods or services offered by DEFENDANTS under nongenuine Cisco Marks.

43. DEFENDANTS are not and has never been authorized by Plaintiffs to use the Cisco Marks on or in connection with the goods or services DEFENDANTS are alleged to have sold

...

...

herein.

44. DEFENDANTS have therefore used a counterfeit mark, as defined under 15 U.S.C. § 1116(d) and/or 15 U.S.C. § 1127 in connection with the sale, offering for sale, or distribution of goods or services in violation of 15 U.S.C. § 1114(1).

45. DEFENDANTS' use of counterfeit Cisco Marks results in substantial injury, loss, property damage, and damages to its right in and to the Cisco Marks, and the goodwill associated therewith.

46. These infringing acts have occurred in interstate commerce and have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

47. Plaintiffs are entitled to statutory damages, as provided by 15 U.S.C. § 1117(c).

### THIRD CAUSE OF ACTION
### (Unfair Competition
### 15 U.S.C. § 1125(a)(1)(A))

48. Plaintiffs incorporate paragraphs 1-47 of this Complaint as if fully set forth herein.

49. Defendant did without authorization make false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which were and are likely to cause confusion, or to cause mistake, or to deceive customers as to the affiliation, connection, or association of Defendant with Plaintiffs, and/or as to the origin, sponsorship, or approval of the Defendant's goods or services, or commercial activities.

50. Plaintiffs allege on information and belief that Defendant's acts have been committed with knowledge of Plaintiffs' exclusive common law rights and goodwill in the Cisco Marks, as well as with bad faith and the intent to cause confusion, mistake and/or to deceive.

51. Plaintiffs have suffered, and, if the Defendant is not enjoined from its wrongful acts of passing off and acts of making false designations or origin, false or misleading descriptions of fact, and false or misleading representations of fact as described herein, will continue to suffer, great and irreparable injury, loss, and damages to its rights in and to the Cisco Marks and the goodwill associated therewith for which it has no adequate remedy at law.

52. As a result of the Defendant's wrongful acts, Plaintiffs have suffered and will continue to suffer loss of income, profits, and valuable business opportunities, and, if not restrained, Defendant will have unfairly derived and will continue to unfairly derive income, profits and business opportunities as a result of its wrongful acts.

53. As the acts alleged herein violation Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiffs are entitled to monetary damages, and other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, including treble damages, a reasonable attorney's fee and prejudgment interest, and/or statutory damages provided by 15 U.S.C. § 1125.

### FOURTH CAUSE OF ACTION
(Breach of Contract)

54. Plaintiffs incorporate paragraphs 1-53 of this Complaint as if fully set forth herein.

55. ZHAO executed the ICPA on behalf of JDC Networking and Cafe of Art, wherein she agreed that she would not source Cisco products from outside authorized sources, and would not sell counterfeit Cisco products.

56. ZHAO and CAFE OF ART breached the ICPA by trafficking in counterfeit Cisco products.

57. As a direct result of ZHAO's and CAFE OF ART's breaches of the ICPA, Plaintiffs have suffered monetary damages and other consequential damages.

### PRAYER FOR RELIEF

That following trial of this action the Court enter judgment as follows:

1. That the Defendant directly infringed and counterfeited the CISCO Marks, and engaged in unfair competition through use of their counterfeit and/or infringing marks;

2. That Defendant's trademark infringement and counterfeiting were knowing and willful and committed with bad faith and intent to deceive;

3. That this case is exceptional under 15 U.S.C. § 1117(a);

4. That Plaintiffs be awarded actual damages;

5. That Plaintiffs be awarded statutory damages of $22,000,000;

6. That Plaintiffs be awarded prejudgment interest;

7. That Plaintiffs be awarded reasonable attorneys' fees;

8. That Plaintiffs be awarded treble damages;

9. That Plaintiffs be awarded the Defendants' profits and actual damages;

10. That Plaintiffs be awarded punitive and exemplary damages.

11. That Plaintiffs be awarded the costs of prosecuting this claim;

12. That defendant be required to account to Plaintiffs for all profits and damages resulting from defendant'srespective infringing activities and that the award to Plaintiffs be increased as provided for under 15 U.S.C. § 1117, and;

13. That Plaintiffs be granted such other and further relief as the Court deems just and proper.

Dated: August 1, 2013        POE & BURTON PLLC

_____
PRESTON BURTON
(Va. State Bar No. 30221)
Attorney for Plaintiffs Cisco Systems, Inc., and Cisco Technology, Inc.
Poe & Burton PLLC
1030 15th Street, N.W., Suite 580 West
Washington, D.C. 20005
Telephone:    202-583-2500
Facsimile:    202-583-0565
Email: pburton@poeburton.com

Of Counsel:

RICHARD J. NELSON (*pro hac vice* application pending)
ANDREW J. MUIR (pro hac vice application pending)
Attorney for Plaintiffs Cisco Systems, Inc., and Cisco Technology, Inc.
SIDEMAN & BANCROFT LLP
One Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Telephone:    415-392-1960
Facsimile:    415-392-0827
Email: rnelson@sideman.com

COMPLAINT